UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| THOMAS J. OLSEN, Individually and on behalf of all other persons similarly situated,<br><br>             Plaintiff,<br><br>   v.<br><br>SPINN INC.,<br><br>             Defendant. | ECF CASE<br><br><br>No.: _____<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

INTRODUCTION

1.      Plaintiff Thomas J. Olsen, who is legally blind, brings this civil rights action against Defendant Spinn, Inc. ("Defendant") for its failure to design, construct, maintain, and operate its website, www.spinn.com (the "Website"), to be fully accessible to and independently usable by Plaintiff Olsen and other blind or visually-impaired people. Defendant denies full and equal access to its Website.

2.      Plaintiff Olsen, individually and on behalf of others similarly situated, asserts claims under the Americans With Disabilities Act ("ADA"), New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL") against Defendant.

3.      Plaintiff Olsen seeks a permanent injunction to cause Defendant to change its corporate policies, practices, and procedures so that its Website will become and remain accessible to blind and visually-impaired consumers.

-1-

## THE PARTIES

4.      Plaintiff Olsen is, at all relevant times, a resident of Brooklyn, New York, Kings County. As a blind, visually-impaired handicapped person, he is a member of a protected class of individuals under Title III of the ADA, under 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.*, the NYSHRL and NYCHRL.

5.      Defendant is at all relevant times a foreign business corporation  that is organized under Delaware law.  Upon information and belief, Defendant is authorized to do business in the State of New York.  It does business within the State by shipping its products to consumers located within the State.

## JURISDICTION AND VENUE

6.      This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiff Olsen's claims arise under Title III of the ADA, 42 U.S.C. § 12181, *et seq.*, and 28 U.S.C. § 1332.

7.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff Olsen's NYSHRL, N.Y. Exec. Law Article 15, and NYCHRL, N.Y.C. Admin. Code § 8-101 *et seq.*, claims.

8.      Venue is proper under §1391(b)(2) as a substantial part of the events giving rise to the claims occurred in this District: Plaintiff Olsen is a resident of this District; and he has attempted to access the Website in this District and, in doing so, was denied the full use and enjoyment of the facilities, goods, and services of the Website while in Kings County and these access barriers have denied him full and equal access to

the Website, which now deter him from visiting Defendant's website, violating his rights under Title III of the ADA.

9.      This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

<u>NATURE OF ACTION</u>

10.      The COVID-19 pandemic has shifted the word into an almost entirely online model. Restaurants need a website for customers to place pick-up and delivery orders. Entertainment venues are delivering performances to audiences via their Websites or other online streaming services. Our educational institutions, including private schools and Universities have shifted to a virtual classroom with distance-learning being the new normal. Furthermore, with store closures or capacity limitations, stores are relying on their Websites to serve as the fundamental point of contact between their business and consumers. Companies that already had a strong online presence have an advantage over stores that only recently are forced to switch over to an online mode.

11.      In order for blind and visually impaired consumers to access these Websites, they must use screen reading software. Blind and visually impaired users of Windows operating system-enabled computers and devices have several screen-reading software programs available to them. Some of these programs are available for purchase and other programs are available without the user having to purchase the program separately. Job Access With Speech ("JAWS") is currently the most popular, separately purchased and downloaded screen-reading software program available for a Windows

computer. Apple has its own proprietary software called VoiceOver that comes with all Apple devices.

12. For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the blind or visually impaired user is unable to access the same content available to sighted users.

13. The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 are well-established guidelines for making websites accessible to blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure its websites are accessible.

14. For a website to be equally accessible to a blind or visually impaired person, under these guidelines, it should have following:

    a. Alternative text ("alt-text") or text equivalent for every non-text element. Alt-text is an invisible code embedded beneath a graphical image on a website. Web accessibility requires that alt-text be coded with each picture so that screen-reading software can speak the alt-text where a sighted user sees pictures, which includes captcha prompts. Alt-text does not change the visual presentation, but instead a text box shows when the mouse moves over the picture. The lack of alt-text on these graphics prevents screen readers from accurately vocalizing a description of the graphics, depriving that person from knowing what is on the website.

    b. Videos have audio description.

c.      Title frames with text are provided. Absent these titles, navigating a website is particularly difficult.

d.      Webpage headings are properly labeled with the topic or purpose of the webpage, versus being blank. Screen readers read out page headings, allowing users to quickly skip to a section. Navigation is, however, very difficult without those headings.

e.      Equivalent text is provided when using scripts.

f.      Forms may be completed with the same information and functionality as for sighted persons. Absent forms being properly labeled, it is difficult for a visually impaired or blind individual to complete the forms, as they do not know what the fields, how to input data, or what options to select (e.g., selecting a date or a size). A compliant website will, instead, provide labels or instructions when content requires user input. This includes captcha prompts, requiring the user to verity that he or she is not a robot.

g.      Information about the meaning and structure of content is conveyed by more than the visual presentation of content.

h.      Web pages do not share the same ID or title. When two or more elements on a web page share the same ID or title, it causes problems in screen readers which use IDs for labeling controls and table headings.

i.      Linked images must contain alt-text explaining the image. Absent that alt-text, a screen reader has no content to present the user as to what the image is.

j.      The purpose of each link is easily determined from how the link is labeled. Absent properly labeling each link or when no description exists, it confuses

keyboard and screen-reader users as they do not know the purpose of the links. This includes captcha prompts.

k.      No redundant links where adjacent links go to the same URL address. When redundant links exist, it causes additional navigation and repetition for keyboard and screen-reader users.

l.      Portable Document Formats (PDFs) are accessible. When they are inaccessible, the visually impaired or blind individual cannot learn what information is on them.

m.      One or more keyboard operable user interface has a mode of operation where the keyboard focus indicator is discernible.

n.      Changing the setting of a user interface component does not automatically cause a change of content where the user has not been advised before using the component.

o.      The name and role of all user interface elements can be programmatically determined; items that can be set by the user can be programmatically set; and/or notification of changes to these items are available to user agents, including assistive technology.

## STATEMENT OF FACTS

### Defendant, Its Website And Its Website's Barriers

15.      Defendant is retailer of a digital coffee and espresso maker which grinds and then brews hole coffee beans based on the desired quantity and type of coffee drink. The machine also senses when the quantity of beans is running low and can automatically place an order through a wifi connection.

16.     Defendant's Website is heavily integrated with its retail operations. Through the Website, Defendant's customers are also, *inter alia*, able to: learn about the product, learn about the types of drinks it can produce, learn about the app that can be purchased to manage the device on your smartphone, read the blog, sign up for a coffee subscription and customize an auto-order and make a one-time purchase of the coffee maker and/or coffee products.

17.     Defendant's Website is a commercial marketplace.  With no brick-and-mortar stores, the Website is the exclusive point of sale for Defendant's products. Defendant also offers locally produced coffee beans from more than one hundred and fifty (150) local roasters.

18.     It is, upon information and belief, Defendant's policy and practice to deny Plaintiff Olsen and other blind or visually-impaired users' access to its Website, thereby denying the facilities and services that are offered and integrated with its retail operations. Due to its failure and refusal to remove access barriers to its Website, Plaintiff Olsen and visually-impaired persons have been and are still being denied equal access to Defendant's retail operations and the numerous facilities, goods, services, and benefits offered to the public through its Website.

19.     Plaintiff Olsen cannot use a computer without the assistance of screen-reading software. He is, however, a proficient JAWS screen-reader user and uses it to access the Internet. He has visited the Website on separate occasions using JAWS screen-reading software.

20.     During his visits to the Website, the last occurring on or about December 18, 2020, Plaintiff Olsen encountered multiple access barriers that denied him the full

enjoyment of the facilities, goods, and services of the Website, as well as to the facilities, goods, and services of Defendant's retail operations. Because of these barriers, he was unable to, substantially equal to sighted individuals:

a.      Know what is on the Website. This is in part due to the non-text images lacking proper alternative text. Immediately upon entering the site, there are three (3) unlabeled graphics at the top of the home page. Several other images are not even detected by the screen reader.  For example, a sighted user has a graphic that compares the various spin speed options depending on the type of beverage being brewed.  This image is not even detected by the screen reader.  Plaintiff Olsen had difficulty learning about pricing.  As the product was on sale when Plaintiff Olsen was on the Website, the screen reader picks up both the original price and the sale price with no explanation as to why two prices are listed.  Plaintiff Olsen could not learn about subscriptions because the options are labeled only as "clickable graphic" as opposed to "$5 per month" and "$50 per year" as presented to a sighted user.  Similarly, the steps explaining the auto-order process are unclear due to poorly labeled graphics.  For example, step two presents as "clickable x four times" and step three is labeled "auto order on off".

b.      Navigate the Website. This site was difficult to navigate using a screen reader.  There is inconsistent heading navigation throughout the site.  There is no use of ARIA, therefore after selecting "add to cart" there is no alert that the item has been added and focus is not redirected.  Plaintiff Olsen must scroll through the Website to locate the order summary which opens at the top of the page.  The links on the home page to various topics are not presented in a manner that is accessible to screen readers. Clicking on one of the topics, "sustainability" for example, does not result in any alert

that new content has loaded and focus is not redirected.  Plaintiff Olsen needed sighted assistance to know to scroll up to locate the new information.

        c.      Take the coffee preference quiz.  Defendant's Website provides a quiz to help customers understand their coffee preferences prior to placing an order.  This quiz is completely inaccessible to screen reader users.  The options are not properly labeled to alert a screen reader user how to interact.  There is no alert when an option is selected.  Some options are not even detected by the screen reader.

        d.      Complete a purchase.  Plaintiff Olsen had difficulty completing a purchase.  On the "Pre Order" page, there are several different add to cart buttons and after selecting one there is no alert which package and/or item has been added.

        21.      Plaintiff Olsen was denied full and equal access to the facilities and services Defendant offers to the public on its Website because he encountered multiple accessibility barriers that visually-impaired people often encounter with non-compliant websites:

        a.      Lack of alt-text for images.

        b.      Videos cannot be paused.

        c.      Document titles are blank.

        d.      Form controls have no label.

        e.      Links use general text like "more" on the home page, with no surrounding text explaining the link purpose.

        f.      PDFs are not properly tagged and therefore are inaccessible to screen reader users.  This includes PDFs explaining safety precautions and how Defendant uses personally identifiable information on the app.

g.      Some headings are empty.

<u>Defendant Must Remove Barriers to Its Website</u>

22.    Due to the inaccessibility of its Website, blind and visually-impaired customers such as Plaintiff Olsen, who need screen-readers, cannot fully and equally use or enjoy the facilities, goods, and services Defendant offers to the public on its Website. The Website's access barriers that Plaintiff Olsen encountered have caused a denial of his full and equal access in the past, and now deter him on a regular basis from accessing the Website. These access barriers have likewise deterred him from taking advantage of Defendant's online retail services and enjoying it equal to sighted individuals.

23.    If the Website was equally accessible to all, Plaintiff Olsen could independently navigate it, view goods and service items; learn about Defendant's products, learn about the coffee subscription, and complete the flavor preference quiz, as sighted individuals can.

24.    Through his attempts to use the Website, Plaintiff Olsen has actual knowledge of the access barriers that make these services inaccessible and independently unusable by blind and visually-impaired people.

25.    Because simple compliance with the WCAG 2.1 Guidelines would provide Plaintiff Olsen and other visually-impaired consumers with equal access to the Website, Plaintiff Olsen alleges that Defendant has engaged in acts of intentional discrimination, including, but not limited to, the following policies or practices:

a.      Constructing and maintaining a website that is inaccessible to visually-impaired individuals, including Plaintiff Olsen;

b.      Failing to construct and maintain a website that is sufficiently intuitive to be equally accessible to visually-impaired individuals, including Plaintiff Olsen; and,

c.      Failing to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually impaired consumers, such as Plaintiff Olsen, as a member of a protected class.

26.     Defendant therefore uses standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein.

27.     Title III of the ADA expressly contemplates the injunctive relief that Plaintiff Olsen seeks under 42 U.S.C. § 12188(a)(2).

28.     Because its Website has never been equally accessible, and because Defendant lacks a corporate policy that is reasonably calculated to cause its Website to become and remain accessible, Plaintiff Olsen seeks a permanent injunction under 42 U.S.C. § 12188(a)(2) requiring Defendant to retain a qualified consultant acceptable to Plaintiff Olsen to assist Defendant to comply with WCAG 2.1 guidelines for its Website:

a.      Remediating the Website to be WCAG 2.1 AA compliant;

b.      Training Defendant's employees and agents who develop the Website on accessibility compliance under the WCAG 2.1 guidelines;

c.      Regularly checking the accessibility of the Website under the WCAG 2.1 guidelines;

d.    Regularly testing user accessibility by blind or vision-impaired persons to ensure that Defendant's Website complies under the WCAG 2.1 guidelines; and,

e.    Developing an accessibility policy that is clearly disclosed on Defendant's Website, with contact information for users to report accessibility-related problems.

29.    Although Defendant may currently have centralized policies on maintaining and operating its Website, Defendant lacks a plan and policy reasonably calculated to make them fully and equally accessible to, and independently usable by, blind and other visually impaired consumers.

30.    Without injunctive relief, Plaintiff Olsen and other visually impaired consumers will continue to be unable to independently use the Website, violating its rights.

31.    Defendant has, upon information and belief, invested substantial sums in developing and maintaining its Website and has generated significant revenue from the Website. These amounts are far greater than the associated cost of making its Website equally accessible to visually impaired customers.

32.    Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

<u>CLASS ACTION ALLEGATIONS</u>

33.    Plaintiff Olsen seeks to certify a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the United States who have attempted to access Defendant's Website and as a result have been denied access to the equal

enjoyment of goods and services offered by Defendant during the relevant statutory period ("Class Members").

34.    Plaintiff Olsen seeks to certify a State of New York subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the State of New York who have attempted to access the Website and as a result have been denied access to the equal enjoyment of goods and services offered by Defendant during the relevant statutory period ("New York Subclass Members").

35.    Plaintiff Olsen seeks to certify a New York City subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the City of New York who have attempted to access the Website and as a result have been denied access to the equal enjoyment of goods and services offered by Defendant during the relevant statutory period ("New York City Subclass Members").

36.    Common questions of law and fact exist amongst the Class Members, New York Subclass Members and New York City Subclass Members:

a.    Whether Defendant's Website is a "commercial marketplace" effecting interstate commerce;

b.    Whether Defendant's Website is a "public accommodation" or a service or good "of a place of public accommodation" under Title III of the ADA;

c.    Whether Defendant's Website is a "place or provider of public accommodation" or an "accommodation, advantage, facility or privilege" under the NYSHRL or NYCHRL;

d.      Whether Defendant's Website denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating Title III of the ADA; and

e.      Whether Defendant's Website denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating the NYSHRL or NYCHRL.

37.     Plaintiff Olsen's claims are typical of the Class Members, New York Subclass Members and New York City Subclass Members: they are all severely visually impaired or otherwise blind, and claim that Defendant has violated Title III of the ADA, NYSHRL or NYCHRL by failing to update or remove access barriers on its Website so it can be independently accessible to the visually impaired individuals.

38.     Plaintiff Olsen will fairly and adequately represent and protect the Class and Subclasses' interests because he has retained and is represented by counsel competent and experienced in complex class action litigation, and because he has no interests antagonistic to the Class or Subclasses. Class certification of the claims is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class and Subclasses, making appropriate both declaratory and injunctive relief with respect to Plaintiff, the Class and Subclasses.

39.     Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because fact and legal questions common to Class and Subclass Members predominate over questions affecting only individuals, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

40.    Judicial economy will be served by maintaining this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people with visual disabilities throughout the United States.

<u>FIRST CAUSE OF ACTION</u>
VIOLATIONS OF THE ADA, 42 U.S.C. § 12181 *et seq.*

41.    Plaintiff Olsen, individually and on behalf of the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

42.    Title III of the ADA prohibits "discriminat[ion] on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

43.    Defendant's Website is a public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). Its Website is a service, privilege, or advantage of Defendant's online retail operation.

44.    Under Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

45.    Under Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii).

46.    Under Title III of the ADA, unlawful discrimination also includes, among other things:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

47.    These acts violate Title III of the ADA, and the regulations promulgated thereunder. Plaintiff Olsen, who is a member of a protected class of persons under Title III of the ADA, has a physical disability that substantially limits the major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, he has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons.

48.    Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff Olsen requests the relief as set forth below.

<u>SECOND CAUSE OF ACTION</u>
VIOLATIONS OF THE NYSHRL

49.    Plaintiff Olsen, individually and on behalf of the New York Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

-16-

50.     N.Y. Exec. Law § 296(2)(a) provides that it is "an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation . . . because of the . . . disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

51.     Defendant's Website constitutes a sales establishment and public accommodation under N.Y. Exec. Law § 292(9). Defendant's Website is a service, privilege or advantage of Defendant's retail operations.

52.     Defendant is subject to NYSHRL because it owns and operates its Website which is accessible to consumers located in the State of New York and Defendant ships its products to customers located in the State. Defendant is a "person" under N.Y. Exec. Law § 292(1).

53.     Defendant is violating N.Y. Exec. Law § 296(2)(a) in refusing to update or remove access barriers to its Website, causing its Website and the services integrated with its retail operations to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, goods and services that Defendant makes available to the non-disabled public.

54.     Under N.Y. Exec. Law § 296(2)(c)(i), unlawful discriminatory practice includes, among other things, "a refusal to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alter the

nature of such facilities, privileges, advantages or accommodations being offered or would result in an undue burden."

55.     Under N.Y. Exec. Law § 296(2)(c)(ii), unlawful discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden."

56.     Readily available, well-established guidelines exist on the Internet for making websites accessible to the blind and visually impaired. These guidelines have been followed by other large business entities and government agencies in making their websites accessible, including but not limited to: adding alt-text to graphics and ensuring that all functions can be performed using a keyboard. Incorporating the basic components to make its Website accessible would neither fundamentally alter the nature of its business nor result in an undue burden to them.

57.     Defendant's actions constitute willful intentional discrimination against the class because of a disability, violating the NYSHRL, N.Y. Exec. Law § 296(2), in that Defendant has:

        a.     Constructed and maintained a website that is inaccessible to Class Members with knowledge of the discrimination; and/or

        b.     Constructed and maintained a website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

    c.    Failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

58.    Defendant discriminates, and will continue in the future to discriminate against Plaintiff Olsen and New York Subclass Members on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of Defendant's Website under § 296(2) *et seq.* and/or its implementing regulations. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and the New York Subclass Members will continue to suffer irreparable harm.

59.    As Defendant's actions violate the NYSHRL, Plaintiff Olsen seeks injunctive relief to remedy the discrimination.

60.    Plaintiff Olsen is also entitled to compensatory damages, as well as civil penalties and fines under N.Y. Exec. Law § 297(4)(c) *et seq.* for every offense.

61.    Plaintiff Olsen is also entitled to reasonable attorneys' fees and costs.

62.    Under N.Y. Exec. Law § 297 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

THIRD CAUSE OF ACTION
VIOLATIONS OF THE NYCHRL

63.    Plaintiff Olsen, individually and on behalf the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

64.    The NYCHRL provides that "It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation, because of . . .

disability . . . directly or indirectly, to refuse, withhold from or deny to such person, any of the accommodations, advantages, facilities or privileges thereof." N.Y.C. Admin. Code § 8-107(4)(a).

65.    Defendant's Website is a sales establishment and public accommodation under NYCHRL, N.Y.C. Admin. Code § 8-102(9). Defendant's Website is a service that is integrated with its retail operations.

66.    Defendant is subject to NYCHRL because it owns and operates its Website and markets it to consumers located in the City of New York.    For these reasons, Defendant is a "person: under N.Y.C. Admin. Code § 8-102(1).

67.    Defendant is violating the NYCHRL in refusing to update or remove access barriers to Website, causing its Website to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, goods, and services that Defendant makes available to the non-disabled public.

68.    Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating on the basis of disability shall make reasonable accommodation to enable a person with a disability to . . . enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

69.    Defendant's actions constitute willful intentional discrimination against the Subclass because of a disability, violating the NYCHRL, N.Y.C. Admin. Code § 8-107(4)(a) and § 8-107(15)(a,) in that it has:

a.      Constructed and maintained a website that is inaccessible to blind class members with knowledge of the discrimination; and/or

b.      Constructed and maintained a website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c.      Failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

70.     As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff Olsen and the New York City Subclass Members because of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of its Website and its establishments under § 8-107(4)(a) and/or its implementing regulations. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and the New York City Subclass will continue to suffer irreparable harm.

71.     As Defendant's actions violate the NYCHRL, Plaintiff Olsen seeks injunctive relief to remedy the discrimination.

72.     Plaintiff Olsen is also entitled to compensatory damages, as well as civil penalties and fines for each offense. N.Y.C. Admin. Code §§ 8-120(8), 8-126(a).

73.     Plaintiff Olsen is also entitled to reasonable attorneys' fees and costs.

74.     Under N.Y.C. Admin. Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

<u>FOURTH CAUSE OF ACTION</u>
DECLARATORY RELIEF

75.    Plaintiff Olsen, individually and on behalf the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

76.    An actual controversy has arisen and now exists between the parties in that Plaintiff Olsen contends, and is informed and believes that Defendant denies, that its Website contains access barriers denying blind customers the full and equal access to the goods, services and facilities of its Website and by extension its online retail operations, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, N.Y. Exec. Law § 296, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.* prohibiting discrimination against the blind.

77.    A judicial declaration is necessary and appropriate now in order that each of the parties may know its respective rights and duties and act accordingly.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff Olsen respectfully requests this Court grant the following relief:

a.    A preliminary and permanent injunction to prohibit Defendant from violating Title III of the ADA, 42 U.S.C. §§ 12182, *et seq.,* N.Y. Exec. Law § 296, *et seq.,* N.Y.C. Admin. Code § 8-107, *et seq.*, and the laws of New York;

b.    A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make its Website into full compliance with the requirements set forth in Title III of the ADA, and its implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c.      A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by ADA, 42 U.S.C. §§ 12182, *et seq.,* N.Y. Exec. Law § 296, *et seq.*, N.Y.C. Admin. Code § 8-107, *et seq.*, and the laws of New York

d.      An order certifying the Class and Subclasses under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and his attorneys as Class Counsel;

e.      Compensatory damages in an amount to be determined by proof, including all applicable statutory damages, punitive damages and fines;

f.      Pre- and post-judgment interest;

g.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h.      Such other and further relief as this Court deems just and proper.

<u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff Olsen demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
       January 27, 2021

LIPSKY LOWE LLP


<u>s/ Douglas B. Lipsky</u>
Douglas B. Lipsky
Christopher H. Lowe
420 Lexington Avenue, Suite 1830
New York, New York 10017-6705
212.392.4772
doug@lipskylowe.com
chris@lipskylowe.com